# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: December 3, 2018

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| AMY WYLLIS, | * | UNPUBLISHED |
| *Next Friend of R.S., a Minor* | * | |
| | * | No. 11-764V |
| | * | |
| Petitioner, | * | Special Master Gowen |
| v. | * | |
| | * | Joint Stipulation; Influenza (Flu); |
| SECRETARY OF HEALTH | * | Guillain-Barré Syndrome (GBS); |
| AND HUMAN SERVICES, | * | Chronic Inflammatory |
| * | | Demyelinating Polyneuropathy |
| Respondent. | * | (CIDP). |

* * * * * * * * * * * * * * * * * * * * * * * *

<u>Scott William Rooney</u>, Nemes, Rooney P.C., Farmington Hills, MI, for petitioner.
<u>Lisa Ann Watts</u>, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON STIPULATION[1]

On November 14, 2011, Amy Wyllis[2] ("petitioner") filed a petition in the National Vaccine Injury Compensation Program ("Program") on behalf of her minor daughter, R.S.[3] Petition (ECF No. 1). Petitioner alleged that R.S. developed Guillain-Barré Syndrome ("GBS") and/or Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP") as a result of receiving an influenza ("flu") vaccination on October 10, 2010. *Id.* at ¶ 47.

On December 3, 2018, the parties filed a joint stipulation in which they stated that a decision should be entered awarding compensation to petitioner. Stipulation (ECF No. 180).

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** *Id.*

[2] The petition was filed under petitioner's marred name, Amy Sternhagen. I issued an order amending the caption on September 10, 2018, to reflect that petitioner reverted to the use of her maiden name, Amy Wyllis.

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act").

Respondent denied that the vaccine caused R.S. to suffer from GBS, CIDP, or any other injury, and further denies that R.S.'s current disabilities are sequelae of a vaccine-related injury. *Id.* at ¶ 6.

Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding compensation to petitioner according to the terms of the joint stipulation attached hereto as Appendix A.

**The joint stipulation awards:**

a. **A lump sum of $274,621.62, which amount represents compensation for first year life care expenses ($24,621.62) and pain and suffering ($250,000.00), in the form of a check payable to petitioner as guardian/conservator of the estate of R.S. for the benefit of R.S. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian/conservator of R.S.' s estate;**

b. **A lump sum of $10,237.17, which amount represents reimbursement of a State of Michigan lien for services rendered on behalf of R.S., in the form of a check payable jointly to petitioner and the State of Michigan, and mailed to:**

> **Michigan Department of Health and Human Services**
> **Third Party Liability Division**
> **P.O. Box 30053**
> **Lansing, MI 48909**
> **Medicaid ID#: 0037191527**
> **Attn: Roxanne Schafer**

**Petitioner agrees to endorse this check to the State of Michigan.**

c. **A lump sum of $13,420.45, which amount represents reimbursement of a Meridian Health Plan, a Medicaid plan, lien for services rendered on behalf of R.$., in the form of a check payable jointly to petitioner and**

> **Equian, LLC**
> **P.O. Box 32140**
> **Louisville, KY 40232-2140**
> **Equian's File No.: 600919-110515**
> **Attn: Stephen Snabb**

**Petitioner agrees to endorse this check to Equian, LLC.**

d. **A lump sum of $1,712.98, which amount represents reimbursement of a Midwest Health Plan, a Medicaid plan, lien for services rendered on behalf of R.S .• in the form of a check payable jointly to petitioner and**

**Equian, LLC**
**P.O. Box 32140**
**Louisville, KY 40232-2140**
**Equian's File No.: 688798-111816**
**Attn: Stephen Snabb**

**Petitioner. agrees to endorse this check to Equian, LLC.**

e.      **An amount sufficient to purchase the annuity contract described in paragraph 10 of the Stipulation, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").**

**I find the stipulation reasonable and I adopt it as the decision of the Court in awarding damages, on the terms set forth therein.**

Accordingly, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[4]

**IT IS SO ORDERED.**

<u>s/Thomas L. Gowen</u>
Thomas L. Gowen
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| AMY WYLLIS, next friend of | ) | ECF |
| R.S., a minor, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11-764V |
| | ) | Special Master |
| SECRETARY OF HEALTH | ) | Thomas L. Gowen |
| AND HUMAN SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

STIPULATION

The parties hereby stipulate to the following matters:

1. Amy Wyllis ("petitioner")[1] on behalf of her minor daughter R.S., filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to R.S.'s receipt of the influenza ("flu") vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. R.S. received the flu vaccine on or about October 5, 2010.

3. The vaccine was administered within the United States.

4. Petitioner alleges that R.S. suffered from Guillain-Barré Syndrome ("GBS") and/or chronic inflammatory demyelinating polyneuropathy ("CIDP"), which were caused by the flu vaccine. Petitioner further alleges that R.S. suffered the residual effects of her injuries for more than six months.

---

[1] The petition was filed under petitioner's married name, Amy Sternhagen. The caption was amended by the Special Master on September 10, 2018, to reflect that petitioner reverted to the use of her maiden name, Amy Wyllis, when her divorce was final.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of R.S. as a result of her condition.

6. Respondent denies that the vaccine caused R.S. to suffer from GBS, CIDP, or any other injury, and further denies that R.S.'s current disabilities are sequelae of a vaccine-related injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

a. A lump sum of $274,621.62, which amount represents compensation for first year life care expenses ($24,621.62) and pain and suffering ($250,000.00), in the form of a check payable to petitioner as guardian/conservator of the estate of R.S. for the benefit of R.S. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian/conservator of R.S.'s estate;

b. A lump sum of $10,237.17, which amount represents reimbursement of a State of Michigan lien for services rendered on behalf of R.S., in the form of a check payable jointly to petitioner and the State of Michigan, and mailed to:

Michigan Department of Health and Human Services
Third Party Liability Division
P.O. Box 30053
Lansing, MI 48909
Medicaid ID#: 0037191527
Attn: Roxanne Schafer

Petitioner agrees to endorse this check to the State of Michigan.

c. A lump sum of $13,420.45, which amount represents reimbursement of a Meridian Health Plan, a Medicaid plan, lien for services rendered on behalf of R.S., in the form of a check payable jointly to petitioner and

2

Equian, LLC
P.O. Box 32140
Louisville, KY 40232-2140
Equian's File No.: 600919-110515
Attn: Stephen Snabb

Petitioner agrees to endorse this check to Equian, LLC.

d. A lump sum of $1,712.98, which amount represents reimbursement of a Midwest Health Plan, a Medicaid plan, lien for services rendered on behalf of R.S., in the form of a check payable jointly to petitioner and

Equian, LLC
P.O. Box 32140
Louisville, KY 40232-2140
Equian's File No.: 688798-111816
Attn: Stephen Snabb

Petitioner agrees to endorse this check to Equian, LLC.

e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

a.      A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

b.      Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c.      Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

d.      Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of R.S., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioner, as the court-appointed

3

guardian/conservator of the estate of R.S. for the following items of compensation:

a. For future unreimbursable ACA Gold/Bronze Premium expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,039.04 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $5,486.88 to be paid up to the anniversary of the date of judgment in year 2024. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $5,658.12 to be paid up to the anniversary of the date of judgment in year 2025. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $5,829.48 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $6,013.80 to be paid up to the anniversary of the date of judgment in year 2027. Then, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $6,198.24 to be paid up to the anniversary of the date of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $6,389.28 to be paid up to the anniversary of the date of judgment in year 2029. Then, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $6,586.92 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $3,635.40 to be paid up to the anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $3,707.76 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $3,794.64 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $3,935.88 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $4,051.80 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $4,109.64 to be paid up to the anniversary of the date of judgment in year 2039. Then, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $4,196.64 to be paid up to the anniversary of the date of judgment in year 2040. Then, beginning on the anniversary of the date of judgment in year 2040, an annual amount of $4,280.64 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $4,337.76 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $4,395.72 to be paid up to the anniversary of the date of judgment in year 2043. Then, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $4,424.76 to be paid up to the anniversary of the date of judgment in year 2044. Then, beginning on the anniversary of the date of judgment in year 2044, an annual amount of $4,453.68 to be paid up to the anniversary of the date of judgment in year 2045. Then, beginning on the anniversary of the date of judgment in year 2045, an annual amount of $4,482.60 to be paid up to the anniversary of the date of judgment in year 2046. Then, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $4,511.64 to be paid up to the

anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2047, an annual amount of $4,569.60 to be paid up to the anniversary of the date of judgment in year 2048. Then, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $4,627.44 to be paid up to the anniversary of the date of judgment in year 2049. Then, beginning on the anniversary of the date of judgment in year 2049, an annual amount of $4,714.44 to be paid up to the anniversary of the date of judgment in year 2050. Then, beginning on the anniversary of the date of judgment in year 2050, an annual amount of $4,797.72 to be paid up to the anniversary of the date of judgment in year 2051. Then, beginning on the anniversary of the date of judgment in year 2051, an annual amount of $4,913.52 to be paid up to the anniversary of the date of judgment in year 2052. Then, beginning on the anniversary of the date of judgment in year 2052, an annual amount of $5,058.36 to be paid up to the anniversary of the date of judgment in year 2053. Then, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $5,228.52 to be paid up to the anniversary of the date of judgment in year 2054. Then, beginning on the anniversary of the date of judgment in year 2054, an annual amount of $5,431.32 to be paid up to the anniversary of the date of judgment in year 2055. Then, beginning on the anniversary of the date of judgment in year 2055, an annual amount of $5,659.44 to be paid up to the anniversary of the date of judgment in year 2056. Then, beginning on the anniversary of the date of judgment in year 2056, an annual amount of $5,920.08 to be paid up to the anniversary of the date of judgment in year 2057. Then, beginning on the anniversary of the date of judgment in year 2057, an annual amount of $6,177.24 to be paid up to the anniversary of the date of judgment in year 2058. Then, beginning on the anniversary of the date of judgment in year 2058, an annual amount of $6,466.92 to be paid up to the anniversary of the date of judgment in year 2059. Then, beginning on the anniversary of the date of judgment in year 2059, an annual amount of $6,753.00 to be paid up to the anniversary of the date of judgment in year 2060. Then, beginning on the anniversary of the date of judgment in year 2060, an annual amount of $7,068.00 to be paid up to the anniversary of the date of judgment in year 2061. Then, beginning on the anniversary of the date of judgment in year 2061, an annual amount of $7,386.60 to be paid up to the anniversary of the date of judgment in year 2062. Then, beginning on the anniversary of the date of judgment in year 2062, an annual amount of $7,730.52 to be paid up to the anniversary of the date of judgment in year 2063. Then, beginning on the anniversary of the date of judgment in year 2063, an annual amount of $8,074.56 to be paid up to the anniversary of the date of judgment in year 2064. Then, beginning on the anniversary of the date of judgment in year 2064, an annual amount of $8,447.52 to be paid up to the anniversary of the date of judgment in year 2065. Then, beginning on the anniversary of the date of judgment in year 2065, an annual amount of $8,824.08 to be paid up to the anniversary of the date of judgment in year 2066. Then, beginning on the anniversary of the date of judgment in year 2066, an annual amount of $9,225.96 to be paid up to the anniversary of the date of judgment in year 2067. Then, beginning on the anniversary of the date of judgment in year 2067, an annual amount of $9,425.16 to be paid up to the anniversary of the date of judgment in year 2068. Then, beginning on the anniversary of the date of judgment in year 2068, an annual amount of $9,827.04 to be paid up to the anniversary of the date of judgment in year 2069. Then, beginning on the anniversary of the date of judgment in year 2069, an annual amount of $10,174.68 to be paid up to the

anniversary of the date of judgment in year 2070. Then, beginning on the anniversary of the date of judgment in year 2070, an annual amount of $10,402.80 to be paid up to the anniversary of the date of judgment in year 2071. Then, beginning on the anniversary of the date of judgment in year 2071, an annual amount of $10,688.88 to be paid up to the anniversary of the date of judgment in year 2072, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

b. For future unreimbursable ACA Maximum out of Pocket, Medicare Part B Deductible, Grab Bars, Hand Held Shower, Shower Chair, Support Bars for Toilet, and Tylenol expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,559.08 to be paid up to the second anniversary of the date of judgment. Then, beginning on the second anniversary of the date of judgment, an annual amount of $5,523.08 to be paid up to the anniversary of the date of judgment in year 2024. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $5,528.62 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $6,678.62 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $6,790.61 to be paid up to the anniversary of the date of judgment in year 2043. Then, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $6,699.42 to be paid up to the anniversary of the date of judgment in year 2072. Thereafter, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $232.42 to be paid for the remainder of R.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

c. For future unreimbursable Medigap G expenses, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $1,740.96 to be paid for the remainder of R.S.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

d. For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,000.00 to be paid up to the second anniversary of the date of judgment. Then, beginning on the second anniversary of the date of judgment, an annual amount of $1,500.00 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $1,000.00 to be paid up to the anniversary of the date of judgment in year 2032, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

e. For future unreimbursable Rehabilitation Counseling expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $1,500.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

f. For future unreimbursable Attendant/Caregiver expenses, beginning on the first anniversary of the date of judgment, an annual amount of $10,560.00 to be paid for the

remainder of R.S.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioner in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioner and do not require that the payment be made in one annual installment. The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as R.S. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, and the Life Insurance Company shall be provided within twenty (20) days of R.S.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and any amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

7

13.  Petitioner and her attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14.  Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15.  The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursed expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of R.S. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16.  Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of R.S.'s estate under the laws of the State of Michigan.  No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian/conservator of R.S.'s estate.  If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of R.S. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of R.S. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of R.S., on behalf of herself, R.S., and her heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of R.S. resulting from, or alleged to have resulted from the flu vaccine administered on or about October 5, 2010, as alleged by petitioner in a petition for vaccine compensation filed on or about November 14, 2011, in the United States Court of Federal Claims as petition No. 11-764V.

18. If R.S. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated

and clearly agreed to.  The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21.  Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22.  This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the flu vaccine caused R.S.'s alleged GBS, CIDP, or any other injury, or that R.S.'s current disabilities are sequelae of a vaccine-related injury.

23.  All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of R.S.

END OF STIPULATION

/

/

/

Respectfully submitted,

PETITIONER:

_____
AMY WYLLIS

ATTORNEY OF RECORD FOR
PETITIONER:

_____
SCOTT W. ROONEY, ESQ.
NEMES ROONEY, P.C.
26050 Orchard Lake Rd., Ste. 300
Farmington Hills, MI 48334
Tel:  (248) 442-3300

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

_Ward Sorensen for_
_____
NARAYAN NAIR, M.D.
Director, Division of Injury
Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

Dated:  __12/3/18__

AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:

_____
CATHARINE E. REEVES
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

ATTORNEY OF RECORD FOR
RESPONDENT:

_____
LISA A. WATTS
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4099

11